972 F.2d 338
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
In re: BELAIR 301-50 S.W. Quadrant Commercial Properties,
Incorporated, Debtor.
RCO INVESTMENT COMPANY, Plaintiff-Appellee,
v.
BELAIR 301-50 S.W. Quadrant Commercial Properties,
Incorporated, Defendant-Appellant.
 No. 92-1233.
 United States Court of Appeals,
Fourth Circuit.
 Argued: May 8, 1992
Decided: August 17, 1992
 
 ARGUED: Philip James McNutt, SHULMAN, ROGERS, GANDAL, PORDY & ECKER, P.A., Rockville, Maryland, for Appellant.
 Emil Hirsch, WINSTEAD, SECHREST & MINICK, P.C., Washington, D.C., for Appellee. ON BRIEF: Alan B. Sternstein, Michael V. Nakamura, SHULMAN, ROGERS, GANDAL, PORDY & ECKER, P.A., Rockville, Maryland, for Appellant. J. Maxwell Tucker, WINSTEAD, SECHREST & MINICK, P.C., Washington, D.C., for Appellee.
 Before WIDENER, PHILLIPS, and SPROUSE, Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 Appellant, Belair 301-50 S.W. Quadrant Commercial Properties, Inc. (Belair), filed a voluntary petition under Chapter 11 of the Bankruptcy Code on February 6, 1991. Contending that Belair had filed its petition in bad faith, Belair's primary secured creditor, RCO Investment Company (RCO), moved the bankruptcy court for relief from the automatic stay, or, in the alternative, for dismissal of Belair's Chapter 11 petition. After an extensive hearing on May 2, 1991, Bankruptcy Judge Friend denied both motions.
 
 
 2
 Pursuant to 28 U.S.C. § 158(a), RCO appealed Judge Friend's order to the United States District Court for the District of Maryland. Concluding that Belair's Chapter 11 petition had been filed in bad faith, the district court reversed Judge Friend's order and dismissed Belair's petition. Belair now appeals, seeking reversal of the district court judgment and reinstatement of the bankruptcy court's order permitting it to proceed under Chapter 11.
 
 
 3
 Because we conclude, contrary to the district court, that the bankruptcy court's dispositive findings that the petition was not filed in bad faith were not clearly erroneous, we reverse.
 
 
 4
 * The instant appeal represents one battle in a protracted war between the individuals who control Belair and RCO. For years they have fought for control of a valuable parcel of property located in Prince George's County, Maryland. Although the legal issues presented by this appeal are relatively straight-forward, those issues cannot be understood fully without briefly tracing the complicated history of the affair.
 
 
 5
 Belair is a Maryland corporation, wholly owned and controlled by Francis X. Gaegler, and organized for the purpose of developing several parcels of land at the intersection of U.S. Routes 50 and 301 in Maryland. Route 50 is the major east-west highway running from Washington, D.C., through Annapolis, Maryland, to the eastern shores of Maryland and Delaware.
 
 
 6
 A sister corporation, City of Capitals, Inc. (City), also wholly owned by Gaegler, owns parcels contiguous with the Belair holdings. Using the two corporations more or less interchangeably, Gaegler has been developing a commercial real estate project known as the International Renaissance Center (the Center). At present Belair officially owns about 92 percent of the property, with the remainder held by City.
 
 
 7
 The Center project's difficulties first came before the courts in 1983 when City, faced with foreclosure by its primary financier, First National Bank of Maryland, filed a voluntary petition in bankruptcy under Chapter 11. In 1984, Ronald Cohen, principal of Appellee, RCO, offered his services as a "white knight" to extricate City from its financial crisis.
 
 
 8
 City/Gaegler and RCO/Cohen entered into a memorialized understanding under which RCO/Cohen pledged to pay off City's debts and obtain new financing, in exchange for an interest in the Center project. Under the agreement, Cohen was also made responsible for preparing a plan of reorganization for City's Chapter 11 proceeding. In connection with their understanding the parties executed a stock pledge agreement under which Cohen would gain ownership of the stock of City and Belair in the event the parties were unable to sign a definitive agreement and RCO/Cohen were not thereafter repaid for the funds it advanced on behalf of City and Belair to pay off their debts.
 
 
 9
 The relationship between City/Gaegler and RCO/Cohen soon went sour. Apparently, rather than arranging substitute financing for the Center project, Cohen himself purchased the First National debt through an affiliate, thereby placing himself in a position to gain control of the Center property by foreclosing on the loan. Upon discovering Cohen's actions, Gaegler sought substitute financing for City and Belair on his own. In December of 1984, over Cohen's objection, the bankruptcy court approved City's refinancing of its debt with a loan from the now defunct First Maryland Savings and Loan.
 
 
 10
 Although Cohen apparently had not fulfilled his obligations under the memorialized understanding with City/Gaegler, Cohen claimed that he had a binding agreement entitling him to participate in the Center project, and he sought enforcement of that alleged agreement in bankruptcy court. Because the bankruptcy court had not approved the memorialized understanding between RCO/Cohen and City/Gaegler, it refused to enforce it; however, the court lifted the automatic stay in early 1985 to permit Cohen to sue City in the Circuit Court for Prince George's County, Maryland, for specific performance of the alleged agreement.
 
 
 11
 Three years of complex state court litigation ensued during which time City and Belair were enjoined from further developing the Center property. Ultimately the litigation ended in City and Belair's favor.
 
 
 12
 Just as Cohen's state court actions against City/Gaegler were drawing to a close, First Maryland Savings and Loan, which had since gone into receivership, sought to collect from City and Belair the $12.5 million balance on its refinancing loan. City, which had been prevented by state court injunctions from developing its property, could not pay the loan.
 
 
 13
 Unable to wait for City and Belair to come up with the money, First Maryland's receiver sold the loan notes to the only bidder-RCO/Cohen. RCO paid face value for the defaulted notes, plus $100,000 for a provision in the Deed of Trust securing the notes that allegedly gave the holder a right to forty-five percent of the profits and proceeds of the Center. RCO/Cohen then instituted another action within the City bankruptcy proceeding for a declaration of rights under the Deed of Trust.
 
 
 14
 City and Belair recommenced development of the Center property and began producing some income. In January of 1989, seven years after the filing of its Chapter 11 petition, City finally filed a plan of reorganization. However, before a confirmation hearing was held, the bankruptcy court, Judge Schneider presiding, dismissed the case primarily on the ground that the utter inability of RCO and City to agree on anything eliminated the possibility of a successful reorganization. In dismissing the suit Judge Schneider also pointed to City's prolonged failure to file a reorganization plan and its failure to file monthly reports and pay requisite administrative fees.
 
 
 15
 The dismissal of City's bankruptcy case left RCO/Cohen free to foreclose on the Center property under the notes and Deed of Trust it had purchased from First Maryland's receiver. On the eve of foreclosure several of City's creditors placed it in involuntary bankruptcy, and Belair filed the voluntary Chapter 11 petition at issue in this appeal.
 
 
 16
 RCO moved for relief from the automatic stay under 11 U.S.C. § 362(d)(1), and, in the alternative, for dismissal for cause pursuant to 11 U.S.C. § 305, 1112(b). In the Belair proceeding, Bankruptcy Judge Friend conducted a two day hearing on RCO's motions and denied both. Applying this court's standard for bad faith filing, enunciated in Carolin Corp. v. Miller, 886 F.2d 693 (4th Cir. 1989), Judge Friend determined that RCO as movant had failed to show either an unrealistic possibility of reorganization or subjective bad faith on Belair's part.
 
 
 17
 The district court reversed the bankruptcy court and granted RCO's motion to dismiss. The district court found clearly erroneous the bankruptcy court's determination that Belair's Chapter 11 petition was not filed in bad faith.
 
 
 18
 Belair sought rehearing and a stay pending appeal, both of which were denied by the district court. Belair then appealed to this court and simultaneously sought and was granted an emergency stay of foreclosure pending the outcome of the appeal.
 
 II
 
 19
 * We are now presented with the narrow question whether the bankruptcy court erred by finding that Belair did not file its Chapter 11 petition in bad faith.[1] This determination is subject to review, initially by the district court, "as one of fact subject to the clearly erroneous standard." Id. at 702. We review de novo the district court's determination, applying the same standard.
 
 
 20
 Section 1112(b) of the Bankruptcy Code provides that a bankruptcy court may dismiss a debtor's Chapter 11 petition on request of a party in interest "for cause." The statute defines "cause" with a nonexhaustive list of factors for the court to consider. Our ruling in Carolin established that filing a petition in bad faith can constitute "cause" for dismissal, even though bad faith filing is not one of those enumerated causes.[2] See id. at 698.
 
 
 21
 In Carolin we set forth a two-pronged test for dismissal of a Chapter 11 petition on grounds of bad faith filing. A party moving for dismissal must demonstrate that (1) the plan for reorganization is objectively futile, and (2) the bankrupt party's filing is motivated by subjective bad faith. Id. at 701. Objective futility requires that no realistic possibility of an effective reorganization exists. Subjective bad faith means an intent by the debtor to abuse the protections of Chapter 11 and to cause hardship or delay to creditors, without any real ability to reorganize. The two-pronged test is to be applied stringently, "since it is better to risk proceeding with a wrongly motivated invocation of Chapter 11 protections whose futility is not immediately manifest than to risk cutting off even a remote chance that a reorganization effort so motivated might nevertheless yield a successful rehabilitation." Id.
 
 
 22
 The Fifth Circuit case, In re Little Creek Development Co., 779 F.2d 1068 (5th Cir. 1986), relied upon in Carolin, describes some of the "indicia" that frequently signify the filing of a bad faith petition. In a typical pattern, the debtor owns only one asset, "such as a tract of undeveloped or developed real property." Id. at 1073. The asset is encumbered by liens of secured creditors. There are few, if any, unsecured creditors. The debtor has few employees, little cash flow, and no available sources of income with which to reorganize. According to the Little Creek court, "[r]esort to the protection of the bankruptcy laws is not proper under these circumstances because there is no going concern to preserve, there are no employees to protect, and there is no hope of rehabilitation...." Id.
 
 
 23
 Here, the bankruptcy court determined that neither prong of the Carolin test had been satisfied. The court based its conclusion on findings that (1) the value of the Center property was four times the amount owing to RCO, and that Belair still had substantial equity in the property, (2) Belair was capable of conducting an ongoing business, as evidenced by their recent progress in developing the property and marketing the commercial real estate lots, (3) the prime location of the property increased the chances of a successful reorganization and, significantly, (4) Belair's (and City's) earlier problems in producing a viable plan of reorganization had been caused in large measure by RCO/Cohen's aggressive litigation tactics.
 
 
 24
 Sitting in review, the district court found that the bankruptcy court had misconstrued the facts and misapplied the Little Creek/Carolin bad faith test. The district court asserted that the bankruptcy court denied RCO's motion to dismiss on the sole ground that Belair had a significant "equity cushion" in the Center property. Then, pointing to the "indicia" of bad faith catalogued in the Little Creek case, the district court concluded that a weighing of those indicia could support only one conclusion: that Belair had filed in bad faith. We disagree.
 
 
 25
 There was undoubtedly evidence pointing toward bad faith filing on the part of Belair. The record showed that Belair had very little cash on hand at the time it filed its Chapter 11 petition, and had only one asset, the Center project, which was the object of a scheduled foreclosure. Furthermore, Belair had few unsecured creditors, and supported only one employee-Gaegler's secretary. The petition was filed at the eleventh hour, and a closely related entity, City, had previously filed in bankruptcy. The district court properly identified these as indicia of bad faith.
 
 
 26
 However, we do not believe the district court properly applied the clearly erroneous standard that constrained its review of the bankruptcy court's critical findings on the bad faith issue. Although the district court recited the "clearly erroneous" standard, we have concluded that the court did not accord the deference to the bankruptcy court's findings that that standard requires. The review conducted was essentially de novo, as we think the record amply demonstrates.
 
 
 27
 While it is true that Bankruptcy Judge Friend highlighted in his ruling the fact that Belair had substantial equity remaining in the Center property, this was not, as the district court asserted, the sole finding supporting his ultimate conclusion. He also found that Belair's reorganization plan was plausible, that Belair recently had shown progress in developing its land, and that Belair's and City's earlier inability to mount an effective reorganization had been caused in part by the interference of RCO and Cohen. Though a number of the Little Creek indicia did point toward a bad faith filing, others properly relied on by the bankruptcy court pointed against it. As we noted in Carolin, using the indicia as a device for assessing a suggestion of bad faith filing requires weighing everything in balance and not merely counting up the indicia pro and con. Carolin, 886 F.2d at 701. The bankruptcy court did just that. Its ultimate finding of no bad faith under the Carolin test could only be declared clearly erroneous (whether by the district court or this court) if it were not a"plausible account" of the evidence. Anderson v. Bessemer City, 470 U.S. 564, 574, (1985). We cannot say that it was not, any more than we could say that the district court's contrary "account" was not also a "plausible" one. But the bankruptcy court is the fact-finder here, and it is that court's findings that, if plausible "on the record viewed in its entirety", id., must be accorded the deference commanded by the clearly erroneous review standard.
 
 B
 
 28
 RCO argues in the alternative that even if Bankruptcy Judge Friend did find facts to support his conclusion that Belair filed its Chapter 11 petition in good faith, those factual findings were invalid because they were precluded by contrary findings made by Judge Schneider in City's earlier Chapter 11 case. In essence, RCO argues that because City and Belair are alter egos, and because Judge Schneider found facts that support the conclusion that City had filed its Chapter 11 petition in bad faith, the bankruptcy judge in the instant action was precluded from deviating from those findings.
 
 
 29
 The familiar rules of issue preclusion (collateral estoppel) apply to the decisions of bankruptcy courts. Turshen v. Chapman, 823 F.2d 836 (4th Cir. 1987). Relitigation of an issue previously decided is precluded if the party against whom the prior decision is asserted, or his privy, had a full and fair opportunity to litigate that issue in the earlier case. See Combs v. Richardson, 838 F.2d 112, 114 (4th Cir. 1988). Issue preclusion treats as final only those issues actually and necessarily determined in the prior suit. Id.
 
 
 30
 Here, RCO, asserting issue preclusion, had the burden to establish its elements, and failed to prove that the issue of bad faith was addressed squarely in City's Chapter 11 proceeding. Judge Schneider dismissed City's case for cause on the grounds that City had failed to put forth a workable plan of reorganization, had failed to comply with reporting requirements, and had failed to pay the required fees. Although each of these factual findings may point toward bad faith filing, they do not command such a result, and the bankruptcy court never found explicitly or implicitly that City had filed in bad faith. Judge Friend therefore was not precluded from finding that Belair's petition was filed in good faith.
 
 
 31
 Even if we determined that Judge Schneider implicitly found in the City bankruptcy proceeding that City had filed in bad faith, we still would not give preclusive effect to that finding since Judge Friend properly determined that factual circumstances had changed in the interim between the dismissal of City's case and the initiation of Belair's. Judge Friend found that Belair, unlike City, was able to put forth a workable plan of reorganization and demonstrate some success in developing its property. Significantly, Judge Friend also found changed circumstances in the fact that Cohen had exhausted his state court legal remedies, making it unlikely that litigation would further stall the reorganization process. Thus, Judge Friend based his legal decision regarding good faith on factual circumstances that he could not have been precluded from relying upon, since those circumstances were not in existence at the time of City's earlier proceeding.
 
 
 32
 In sum, because the issue of bad faith filing was not addressed clearly in City's earlier Chapter 11 proceeding, and because circumstances have changed since that proceeding, the bankruptcy court in the instant case was not bound to adopt the facts found by the bankruptcy court in City's earlier proceeding.
 
 III
 
 33
 We hold that the bankruptcy court's finding that Belair did not file its Chapter 11 petition in bad faith was not clearly erroneous, and that the district court erred by reversing the bankruptcy court's determination to that effect. Accordingly, we reverse the judgment of the district court and remand to that court with instructions to remand to the bankruptcy court for reinstatement of its order denying RCO's motions alternatively to lift the automatic stay or to dismiss Belair's petition.
 
 SO ORDERED
 
 
 [1]
 Because we rule in favor of Belair we do not address its contention that the district court abused its discretion by refusing to consider Belair's brief, which was filed out of time
 
 
 [2]
 The cause requirement for dismissal under § 1112(b) is not substantively different from the cause requirement for relief from the automatic stay under § 362(d)(1). See In re Little Creek Development Co., 779 F.2d 1068, 1072 (5th Cir. 1986)