In re **GENERAL DEVELOPMENT CORPORATION, et al.,** Debtors.

Lillian **SKOLNICK** and Barnett Stepak, Plaintiffs/Appellants,

v.

**ATLANTIC GULF COMMUNITIES CORPORATION** f/k/a General Development Corporation, Defendant/Appellee.

Nos. 93–0597–Civ, 93–1378–Civ.

United States District Court, S.D. Florida, Miami Division.

March 7, 1995.

John Halebian, Wechsler, Skirnick, Harwood, Halebian & Feffer, New York City, Robert Yaffe, Steinberg, Slewett & Yaffe, P.A., Miami Beach, FL, for plaintiffs/appellants.

Greenberg & Traurig, Miami, FL, for defendant/appellee.

## ORDER

K. MICHAEL MOORE, District Judge:

This bankruptcy appeal addresses the circumstances in which shareholders can pursue a derivative action after a corporation has filed for bankruptcy reorganization.

## I. Factual and procedural background

Appellants are shareholders of the defunct General Development Corporation ("GDC"). In March 1990, Appellants commenced a derivative action against former GDC directors and officers, alleging civil racketeering and breach of fiduciary duty claims. This action was assigned to Judge Stanley Marcus, a judge of this district. Prior to filing suit, Appellants did not demand that GDC's Board of Directors institute the derivative action.

GDC filed for Chapter 11 bankruptcy reorganization in April 1990. Appellants continued to prosecute their derivative action and demanded to proceed with discovery. In response, GDC initiated an adversary proceeding against Appellants on October 3, 1990 seeking injunctive and declaratory relief. GDC's complaint requested a determination that the claims asserted in the derivative action were property of GDC's bankruptcy estate and, therefore, were subject to an automatic stay. The former GDC directors and officers named in Appellant's lawsuit joined in the adversary proceeding as intervening plaintiffs.

On October 17, 1990, Judge Marcus stayed the derivative action to permit Appellants to file a motion to withdraw reference. Appellants filed such a motion two days later, asking the district court to withdraw the adversary proceeding from the bankruptcy court. On November 30, 1990, the bankruptcy court stayed the adversary proceeding pending resolution of Appellants' motion. Judge Marcus denied the motion on March 17, 1992.

The bankruptcy court confirmed a plan of reorganization of GDC on March 27, 1992. The bankruptcy court's order permanently enjoined Appellants from pursuing the derivative action.

Shortly afterwards, the reorganized debtor—now called Atlantic Gulf Communities Corporation ("Atlantic")[1]—filed a three-count amended adversary complaint. The intervenors also filed an amended complaint. Appellants answered and raised the affirma-

tive defense that GDC had unjustifiably abandoned the derivative claims. Appellants also counterclaimed against the intervenors. This counterclaim realleged the claims brought in the derivative action before Judge Marcus.

GDC filed for partial summary judgment on counts two and three of its complaint. The bankruptcy court granted summary judgment as to count II on February 12, 1993, concluding that Appellants lacked standing to bring the derivative claims. The court concluded that its decision as to count II was dispositive of the adversary proceeding and thus declined to reach counts I and III.

On April 29, 1993, the bankruptcy court entered final judgment in favor of GDC and the intervenors on the basis of the February 12, 1993 order. The court dismissed Appellants' counterclaim with prejudice, entered final judgment in favor of GDC and the intervenors on their complaints, and permanently enjoined Appellants from prosecuting their derivative claims.

Appellants separately appealed the bankruptcy court's February 12, 1993 and April 29, 1993 orders. This Court consolidated these appeals.

## II. Discussion

### A. February 12, 1993 order

GDC argues that this Court lacks jurisdiction to consider Appellants' appeal of the bankruptcy court's February 12, 1993 order. It is correct. This Court has jurisdiction to hear bankruptcy appeals of only (1) final orders and (2) interlocutory orders for which a bankruptcy judge has expressly determined there is no just reason for delay of appeal. 28 U.S.C. § 158(a). The bankruptcy court's partial summary judgment order was not a final order, and the bankruptcy judge did not certify that there was no just reason for delay of an appeal of the order. Fed. R.Civ.P. 54(b); Fed.R.Bank.P. 7054(a). The Court thus lacks subject matter jurisdiction

---

1. For convenience, the Court will refer to Appellee as GDC in both its pre- and post-reorganiza-   tion forms.

over the appeal of the February 12, 1993 order.

### B. April 29, 1993 order

■ Ordinarily, a corporation has exclusive standing to sue for injuries that it alone has suffered. An exception exists for a shareholder who prosecutes a "derivative" claim to redress injuries to the corporation. A shareholder may bring a derivative action only if the corporation's board of directors wrongfully rejects a demand to bring suit or if such a demand is not made because it would be futile. *Stepak v. Addison,* 20 F.3d 398, 402 (11th Cir.1994).[2] A shareholder receives no direct benefit from a derivative suit because any recovery thereunder belongs to the corporation. *Rothenberg v. Security Mgmt. Co., Inc.,* 667 F.2d 958, 960 n. 3 (11th Cir.1982).

■ A corporation's filing for bankruptcy cuts off a shareholder's ability to bring a derivative claim. The commencement of a bankruptcy case creates an estate for the benefit of creditors which encompasses "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The bankruptcy estate includes all legal claims owned by corporate debtor, including derivative actions brought by shareholders. *Matter of Consolidated Bancshares,* 785 F.2d 1249, 1253–54 (5th Cir.1986); *Mitchell Excavators, Inc. v. Mitchell,* 734 F.2d 129, 131 (2d Cir.1984).

■ The bankruptcy trustee—or, as in this case, the debtor in possession—is vested with title to all assets of the estate and becomes the estate's legal representative. 11 U.S.C. § 323; *Dallas Cabana, Inc. v. Hyatt Corp.,* 441 F.2d 865, 866–67 (5th Cir. 1971); *Bryon v. Bank of New York,* 584 F.Supp. 1306, 1315 (S.D.N.Y.1984). Derivative claims are among these assets. While normally the fiduciary obligation of officers, directors and shareholders "is enforceable directly by the corporation or through a stockholder's derivative action, it is, in the event of bankruptcy of the corporation, enforceable by the trustee." *Pepper v. Litton,* 308 U.S. 295, 306–07, 60 S.Ct. 238, 245, 84 L.Ed. 281 (1939). Only the trustee, then, has standing to prosecute derivative claims:

> [T]he filing of the bankruptcy petition instantly alters the rights of a corporation and its creditors. As a general rule, and outside the context of a bankruptcy case, the fiduciary obligation of officers, directors, and shareholders is enforceable directly by the corporation or through a stockholder's derivative action. However, it is, in the event of bankruptcy of the corporation, enforceable by the trustee. For that standard of fiduciary obligation is designed for the protection of the entire community of interests in the corporation—creditors as well as stockholders. The § 541 estate, thus, includes any right of action the debtor corporation may have

---

**2.** The fact that the plaintiff in *Stepak*—an entirely unrelated shareholder's derivative action—happens to be one of Plaintiff–Appellants in this action lends credence to GDC's contention that Appellant Stepak is a "habitual strike suit plaintiff" who has generated numerous reported state and federal decisions in shareholders suits. Given that the Court's own research has turned up 24 additional cases, spanning well over a decade, in which Stepak was a plaintiff in a shareholder's action, there is little doubt that Stepak has made a career of bringing such actions. *See In re Phillips Petroleum Secs. Litig.,* 881 F.2d 1236 (3d Cir.1989); *Cooperstock v. Pennwalt Corp.,* 820 F.Supp. 921 (E.D.Pa.1993); *In re Crazy Eddie Secs. Litig.,* 792 F.Supp. 197 (E.D.N.Y.1992); *Katz v. Pels,* 774 F.Supp. 121 (S.D.N.Y.1991); *Woodward & Lothrop, Inc. v. Schnabel,* 593 F.Supp. 1385 (D.D.C.1984); *Bernstein v. Antar,* 1991 WL 121187 (E.D.N.Y.1991); *Brown v. Steinberg,* 1990 WL 145151 (S.D.N.Y.1990); *Lefkowitz v. Duquesne Light Co.,* 1988 WL 169273 (W.D.Pa.1988); *Stepak v. AMF, Inc.,* 1987 WL 9700 (S.D.N.Y.1987); *Mayer v. Northwest Inds., Inc.,* 1986 WL 8761 (N.D.Ill.1986); *Stepak v. Papercraft Corp.,* 1985 WL 2798 (E.D.Pa.1985); *Stepak v. Katz,* 1985 WL 5816 (E.D.Pa.1985); *Kahn v. Sullivan,* 594 A.2d 48 (Del.1991); *Stepak v. Schey,* 51 Ohio St.3d 8, 553 N.E.2d 1072 (1990); *Selfe v. Joseph,* 501 A.2d 409 (Del.1985); *Stepak v. American Tel. & Tel.,* 186 Cal.App.3d 633, 231 Cal.Rptr. 37 (1986); *Stepak v. Alexander's, Inc.,* 58 A.D.2d 754, 404 N.Y.S.2d 538 (1977); *Stepak v. Tracinda Corp.,* 567 A.2d 424 (Del.1989); *Rand v. The Signal Cos., Inc.,* 502 A.2d 979 (Del.1985); *Stepak v. Occidental Pet. Corp.,* 1992 WL 9045 (Del.Ct.Chanc.1992); *Stepak v. Columbia Pictures Entertainment, Inc.,* 1988 WL 55307 (Del.Ct.Chanc.1988); *Stepak v. Ross,* 1987 WL 25375 (Del.Ct.Chanc.1987); *Joseph v. Shell Oil Co.,* 1985 WL 150466 (Del.Ct.Chanc.1985); *Stepak v. Pioneer Texas Corp.,* 1982 WL 8775 (Del.Ct.Chanc.1982).

to recover damages for misconduct, mismanagement, or neglect of duty by a corporate officer or director. The trustee in bankruptcy succeeds to that right. Its nature is derivative.

*Delgado Oil Co., Inc. v. Torres,* 785 F.2d 857, 860 (10th Cir.1986) (quotations and citation omitted). *Accord John L. Motley Assocs., Inc. v. Rumbaugh,* 97 B.R. 182, 185 (E.D.Pa. 1989).

The Eleventh Circuit applied this rule in *In re All American of Ashburn, Inc.,* 805 F.2d 1515 (11th Cir.1986). In *Ashburn,* a bankruptcy trustee negotiated a settlement of a lender liability claim on behalf of the estate that included a release of all claims against the lender. When the debtor's shareholders later commenced a derivative action against the lender, the bankruptcy court permanently enjoined them from pursuing their action. The district court affirmed this decision. Observing that "the claims of [the shareholders] belong primarily to the debtor corporation" and that the trustee already had resolved the claim against the debtor, the court concluded that the shareholders "were properly enjoined from pursuing an action which is the property of the debtor's estate." *Id.* at 1518. On appeal, the Eleventh Circuit affirmed in a per curiam decision which adopted the district court's opinion.

■■■ *Ashburn* and the other cases cited above indicate that GDC's bankruptcy extinguished Appellants' right to maintain their derivative action. The derivative claims became a part of the bankruptcy estate, and GDC, as debtor in possession, became vested with exclusive authority to pursue them.

■■■ Despite this, Appellants argue that they have regained control over their claims because GDC unjustifiably abandoned them. A debtor in possession may surrender its exclusive right to pursue the estate's legal claims if it voluntarily abandons them or is ordered by a bankruptcy court to abandon

them, *Mitchell,* 734 F.2d at 131–32. In either situation "some proceeding in the bankruptcy court must take place before a shareholder can assert [a derivative] right directly." *Id.* at 132.

The Bankruptcy Code has codified these procedures in section 554 and Rule 6007. Section 554(a) permits a debtor in possession to voluntarily abandon property of the estate after notice of hearing. 11 U.S.C. § 554(a). Implementing this provision, Rule 6007(a) directs that, "[u]nless otherwise directed by the court, the ... debtor in possession shall give notice of a proposed abandonment of property to the ... trustee [and] all creditors. A party in interest may file and serve an objection.... If a timely objection is made, the court shall set a hearing...." Fed.Bkrtcy.R. 6007(a). If no abandonment has occurred, section 554(b) permits a bankruptcy court to order a debtor in possession to abandon estate property upon request by a party in interest and after notice and hearing. 11 U.S.C. § 554(b). Following this, Rule 6007(b) provides: "[a] party in interest may file and serve a motion requesting the ... debtor in possession to abandon property of the estate." Fed.Bkrtcy.R. 6007(b). *See, e.g., Louisiana World Exposition v. Federal Ins. Co.,* 858 F.2d 233, 247 (5th Cir.1988).

Appellants argue that GDC abandoned the derivative claims. Although GDC has never stated that it would not pursue the derivative claims [3], Appellants suggest that GDC effected an abandonment by failing to prosecute them. According to Appellants, GDC's bankruptcy counsel faced a conflict in interest in suing the derivative claim defendants. GDC purportedly has not sued these defendants because of this conflict.

■■■ This "constructive" abandonment claim is fatally defective as a matter of law. A debtor in possession must comply with the notice and hearing procedures set forth in section 554(a) and Rule 6007(a) and must obtain approval from the bankruptcy court before it may abandon a claim. *In re Roth-*

---

**3.** Indeed, the record is clear that GDC has taken no action impairing its right to prosecute these claims. GDC, now reorganized as Atlantic, remains capable of prosecuting Appellants' claims in its own right. GDC's reorganization plan also created a Claims Administration Committee with authority to investigate and prosecute claims on GDC's behalf. If GDC fails to prosecute Appellants' claims, the Claims Administration Committee has the independent authority to litigate them.

*well,* 159 B.R. 374, 377 (D.Mass.1993); *Riverside Mem. Mausoleum, Inc. v. UMET Tr.,* 469 F.Supp. 643, 644 (E.D.Pa.1979); *In re Hyman,* 123 B.R. 342, 348 (9th Cir. BAP 1991), *aff'd,* 967 F.2d 1316 (9th Cir.1992); *In re Teltronics,* 39 B.R. 446, 449 (Bkrtcy. E.D.N.Y.1984). The debtor in possession thus cannot abandon a legal claim merely by failing to prosecute it, whatever its reason may be for not doing so. In *Cabana, Inc. v. Hyatt Corp.,* 441 F.2d 865, a corporation in bankruptcy filed suit against the defendants, alleging that they had driven it out of business. The defendants moved to dismiss on the ground that only the bankruptcy trustee, and not the corporation itself, had standing to prosecute this claim. The corporation responded that the trustee had abandoned the claim by failing to pursue it. The district court entered a dismissal, and the Fifth Circuit affirmed. The court of appeals stated:

> The fact that the trustee has failed to prosecute a claim does not permit a would-be plaintiff to bring suit without first petitioning the bankruptcy court for an order authorizing abandonment of the property.... The failure of the trustee to assert a cause of action against appellees ... is not sufficient to authorize this court to hold that the action has been abandoned and that, therefore, this appellant has a right to maintain it. The remedy of the appellant is to petition the bankruptcy court to compel the trustee to bring suit or to authorize the bankrupt to sue or to make such disposition as appears to be appropriate....

*Id.* at 868.

▮ To the extent that Appellants believe that GDC has not litigated the deriva-

tive claims because its counsel suffers from a conflict of interest, *Cabana* makes clear that the appropriate remedy was *not* for Appellants to bypass the bankruptcy court by pressing on with their own lawsuit. Instead, Appellants should have petitioned the bankruptcy court pursuant to section 554(b) and Rule 6007(b) for an order directing GDC to abandon these claim. Because Appellants indisputably failed to do this[4], they lack standing to maintain their derivative action. *In re Rothwell,* 159 B.R. at 377.

### III. Conclusion

The bankruptcy court's April 29, 1993 final judgment order is **AFFIRMED.**[5] Appellants' appeal of the February 12, 1993 order is **DISMISSED.**

---

**4.** In its April 29 order, the bankruptcy court specifically found that:

> [t]hroughout the two-year period of the Chapter 11 case through the confirmation of GDC's plan of reorganization, Defendants *never* sought relief from the automatic stay to pursue the Derivative Action, nor from the separate stay imposed by the District Court on October 17, 1990. Nor did Defendants *ever* seek the formation of an equity security holders' committee, nor request that GDC or the Unsecured Creditors Committee investigate any of the Derivative Claims.

April 29, 1993 Order at 2–3. The bankruptcy court made the following additional finding in its February 12 order:

> [N]either Defendants nor their counsel took any role whatsoever in the Chapter 11 case.... Defendants' sole effort was to seek withdrawal of the reference of this Adversary Proceeding....

February 12, 1993 Order.

**5.** Because the Court affirms the bankruptcy court on the grounds set forth above, the Court need not consider the bankruptcy court's conclusion that confirmation of GDC's reorganization plan extinguished any interest Appellants may have had in the derivative claims.