**In re GREENWOOD SUPPLY COMPANY, Debtor.**

**No. C/A 01–13697–W.**

United States Bankruptcy Court, D. South Carolina.

March 14, 2002.

William E. Calloway, Columbia, SC, for Debtor.

## ORDER

JOHN E. WAITES, Bankruptcy Judge.

THIS MATTER comes before the Court upon the Motion to Dismiss Petition or for Relief from Automatic Stay (the "Motion") filed by Brantley M. Adams, Sr., Martha Adams, Brantley M. Adams, Jr., Christine Scott Adams, and Matthew Wilson Adams (collectively, the "Minority Shareholders"). The Minority Shareholders argue that Greenwood Supply Company ("Debtor") filed its Chapter 11 bankruptcy petition in bad faith in an attempt to avoid pending civil litigation in state court (the "State Court Action") and, because of this bad faith filing, the Court should dismiss Debtor's bankruptcy case pursuant to 11 U.S.C. § 1112(b).[1] Alternatively, the Minority Shareholders request the Court to grant them relief from the automatic stay pursuant to § 362(d) to permit them to pursue the State Court Action in state court. Debtor objects to the Motion and argues that, based on the two-prong test articulated by the Fourth Circuit in *Carolin Corporation v. Miller*, 886 F.2d 693 (4th Cir.1989), the Minority Shareholders cannot prove that the Chapter 11 case is both objectively futile and that Debtor filed the case in subjective bad faith. In addition, Debtor objects to the Minority Shareholders' request for the lifting of the automatic stay to allow them to prosecute the State Court Action because the Minority Shareholders' causes of action constitute a derivative suit that, upon Debtor's filing bankruptcy, became property of the bankruptcy estate. After considering the pleadings and the arguments and evidence the parties presented at the hearing on the Motion, the Court makes the following Findings of Fact and Conclusions of Law pursuant to Federal Rule 52 of Civil Procedure, applicable in bankruptcy proceedings by Federal Rule 7052 of Bankruptcy Procedure.[2]

## FINDINGS OF FACT

1. Debtor is a corporation that operates a retail store in Greenwood, South Carolina. The store sells industrial supplies, hardware, and sporting goods and has been in business since the 1930s. Currently, it employs twenty-nine full-time employees and sixteen part-time employees.

2. Debtor has issued a total of 1,845 common shares, and members of the Adams family own all of the stock. Although there are eleven shareholders, the shareholders are essentially divided into two blocs with Joe E. Adams, Jr. and his family owning approximately 76% of the shares and the Minority Shareholders owning approximately 24% of the shares.

3. Debtor owns assets, including real property, inventory, and equipment.

a. Debtor's real property is its office and warehouse located at 1225 Highway 72 Bypass NW, Greenwood, South Carolina. The real estate has been appraised between $900,000.00 and $1,100,000.00, and no liens encumber it. Debtor also owns

---

1. Further references to the Bankruptcy Code shall be by section number only.

2. The Court notes that, to the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and, to the extent any Conclusions of Law constitute Findings of Fact, they are so adopted.

property located at 120 Maxwell Avenue, also in Greenwood. Debtor values the Maxwell Avenue property at $67,000.00, and no liens encumber this property either.

b. Debtor has inventory that it values at approximately $1,700,000.00 with a replacement cost of approximately $2,200,000.00.

c. Debtor acknowledges ownership of machinery and equipment used in the business but does not provide a value for these items.

d. Debtor acknowledges it had accounts receivable at the time of filing worth approximately $540,000.00.

4. Debtor's liabilities do not include debts to secured creditors. Debtor has one unsecured priority creditor with claims of approximately $19,000.00 and a number of unsecured non-priority creditors with claims totaling approximately $1,250,000.00.

5. Several problems pushed Debtor to filing bankruptcy. They include the following:

a. Debtor's total revenue peaked in 1993–1995 when its revenue equaled or was in excess of $7,000,000.00 annually. Since 1995, Debtor's revenue has decreased, and, in 2001, its revenue was less than $5,000,000.00.

b. In 1995, Debtor's pre-tax income totaled approximately $200,000.00. Since 1995, the pre-tax income has decreased, and, in 2001, its pre-tax income was $200,000.00.

c. On November 11, 1999, the Minority Shareholders instituted the State Court Action against Debtor and its majority shareholders seeking (1) judicial dissolution, or orders directing, limiting, or prohibiting acts of Debtor or shareholders, directors, or officers, or the purchase at

fair value of the Minority Shareholders' shares by Debtor or other shareholders and (2) an accounting by the majority shareholders, and, upon the finding of self-dealing, waste, or breach of trust and other fiduciary obligations, the restoration of this amount by the majority shareholders to the corporation.

6. Debtor finances its business operations through two lines of unsecured credit provided by The County Bank located in Greenwood, South Carolina. Each line provides for credit of $500,000.00, and Debtor's ability to receive this credit is based in part upon Joe E. Adams, Jr., the Chairman of Debtor, providing a personal guaranty.

7. When Debtor filed bankruptcy, it had drawn approximately $250,000.00 on one of its lines of credit to pay its debts. Debtor is current in its payments to The County Bank.

8. On the date the State Court Action was scheduled to go to trial, December 19, 2001, Debtor filed its bankruptcy petition.

## CONCLUSIONS OF LAW

**I. Dismissal of the Bankruptcy Case Pursuant to § 1112(b).**

In the Fourth Circuit, the standard for dismissing a Chapter 11 case as a bad faith filing is that the moving party must prove (1) the objective futility of the Chapter 11 case and (2) the subjective bad faith in filing the case. *See Carolin Corp. v. Miller,* 886 F.2d 693, 700 (4th Cir.1989). The *Carolin* Court noted that the moving party's burden is demanding, explaining,

This [two prong test] ... is the only sufficiently stringent test of justification for threshold denials of Chapter 11 relief. Such a test obviously contemplates that it is better to risk proceeding with a wrongly motivated invocation of Chapter 11 protections whose futility is not im-

mediately manifest than to risk cutting off even a remote chance that a reorganization effort so motivated might nevertheless yield a successful rehabilitation. Just as obviously, it contemplates that it is better to risk wastefulness of a probably futile but good faith effort to reorganize than it is to risk error in prejudging futility at the threshold. *Id.* at 701. Indeed, the *Carolin* Court succinctly summarized its cautiousness of dismissing a case shortly after its petition date by describing a dismissal at this point as "inherently drastic and not lightly to be made." *Id.* at 700.

■ Beginning with the objective futility prong, the Minority Shareholders argue that, because Debtor is solvent and has the ability to pay its bills as they are due and because the majority shareholders of Debtor are manipulating the Bankruptcy Code to pay Minority Shareholders less than fair value for their shares, the reorganization is objectively futile. Debtor, however, argues that it intends to remain as a going concern and that it will achieve this goal by hiring an independent party to help Debtor analyze the value of its assets, explore alternatives for realizing the maximum value for the estate, and propose its plan of reorganization.

This Court previously addressed the issue of objective futility in *In re Dunes Hotel Associates,* 188 B.R. 162, 169 (Bankr.D.S.C.1995). In *Dunes Hotel,* the Court ruled that an important factor in whether a reorganization is objectively futile is whether the debtor corporation has a significant equity cushion in its primary asset. *See id.* at 169 ("Obviously, whether there is net equity in a principal or single asset could be of importance in assessing the possibility of successful reorganization in a particular case.") (citing *Carolin,* 886 F.2d at 705). The Court believes the case before it falls squarely within the parame-

ters defined in *Dunes Hotel* as Debtor has equity in real property. Indeed, Debtor owns outright real property of five acres of land that includes a 57,000 square foot warehouse, and this property has been appraised between $900,000.00 and $1,100,000.00. Apparently there is no secured creditor with a lien on this property. Debtor could use the equity in the real property as one means to reorganize.

In addition to the existence of equity, Debtor's ability to continue to operate and to pay its debts also indicates that the reorganization is not objectively futile. Debtor finances its operations through lines of credit with The County Bank, and Debtor is not in default with the bank. Furthermore, The County Bank has agreed to extend post-petition credit to Debtor as an administrative expense in the ordinary course of business pursuant to § 364(a). In the Court's view, these factors indicate that Debtor has the real possibility of transforming from a financially troubled debtor to a revitalized one through bankruptcy.

Augmenting this conclusion is a quick comparison to the facts of *Carolin* where the court concluded that the debtor corporation's reorganization was objectively futile. In *Carolin,* several factors supported the court's conclusion, including the debtor's inability to obtain sufficient financing for operating or capital needs, no significant assets save for a fire-damaged building, and no unsecured creditors with substantial claims whose presence would suggest ongoing business relationships. *See Carolin,* 886 F.2d at 702–03. In addition, the debtor had only one employee. In contrast to *Carolin,* the evidence of this case indicates that Debtor has a realistic chance of rehabilitating its business successfully. As previously noted, Debtor has obtained post-petition financing, and it owns several assets that

have significant equity. More important, it is clear that Debtor is an ongoing operation, evidenced by Debtor's twenty-nine full-time employees, sixteen part-time employees, and numerous trade creditors. All of these factors indicate that the Chapter 11 case is not objectively futile.

■■■ Shifting to the subjective bad faith prong, the Court notes that the *Carolin* Court instructed that the analysis of this issue should focus on the totality of the circumstances. *See id.* at 701. Accordingly, this Court has relied on the following list of factors to guide its analysis of subjective bad faith:

(1) The debtor has one asset;

(2) Secured creditors' liens encumber the asset;

(3) There are generally no employees except for the principals, and there is no ongoing business activity;

(4) The debtor has little or no cash flow and no available sources of income to sustain a plan of reorganization or make adequate protection payments;

(5) There are few, if any, unsecured creditors whose claims are relatively small;

(6) There are allegations of wrongdoing by the debtor or its principals;

(7) The timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of secured creditors to enforce their rights;

(8) The debtor is afflicted with the "new debtor syndrome" in which a one asset entity is created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors;

(9) There is no realistic possibility of reorganization of the debtor's business;

(10) The reorganization essentially involves a two-party dispute; and

(11) Bankruptcy offers the only possibility of forestalling the loss of the property. *See Dunes Hotel,* 188 B.R. at 171–72 (citing *Host Mgmt. Inc. v. Palace Homeowner's Assoc., Inc.,* No. 4:91–3132–21, 1992 WL 738797, n. 3 (D.S.C.Jul.15, 1992)); *see also Carolin,* 886 F.2d at 703–05.

■■■ The Minority Shareholders argue that Debtor's filing bankruptcy at the last minute before the trial of the State Court Action supports a finding of bad faith, as the bankruptcy filing is simply a litigation tactic designed to stall the State Court Action. Buttressing their allegations of bad faith, the Minority Shareholders point to several inaccuracies in Debtor's Petition, including omitting the values of its most valuable assets, inflating the amount of total debts, not providing values for real property and inventory when Debtor had information regarding these values, and failing to list payments to insiders that occurred on the brink of Debtor's filing. In addition, the Minority Shareholders characterize Debtor's bankruptcy case as a two-party dispute between the two blocs of shareholders.

In contrast, Debtor argues it filed its case in good faith. To support its position, Debtor points to the depressed textile industry that Debtor previously relied on as a customer base and other economic downturns as causing Debtor's revenue to decrease. In addition, Debtor argues it is not attempting to avoid paying the Minority Shareholders; rather, it seeks to address the issues the Minority Shareholders have raised in the Bankruptcy Court while, at the same time, preserving its business to ensure payments to creditors. Debtor insists that the bankruptcy filing was not a litigation tactic but that it feared the disruption likely in the event of a judgment

being entered against it. Debtor also asserts that it is amending its Schedules and Statement of Affairs to correct mistakes and to provide accurate values for items that were previously listed with "unknown" for a value.

After reviewing the factors, the Court concludes that Debtor does not meet the subjective bad faith standard as defined in *Carolin.* Although the Court decides that the filing was not in subjective bad faith, the Court recognizes the presence of some factors that do suggest bad faith. For example, there are allegations of wrongdoing by Debtor's principals as stated in the Minority Shareholders' Complaint in the State Court Action. In addition, it appears that this bankruptcy case was in fact precipitated by a two-party dispute between the two blocs of shareholders. Also, Debtor's filing its Petition on the morning the State Court Action was scheduled for trial indicates an intent to delay the efforts of the Minority Shareholders to exercise their legal rights. However, while the Court recognizes that there are some indicia of bad faith, it believes that most of the factors set forth in *Carolin* demonstrate that the filing was in good faith. Indeed, Debtor has more than one asset, as its ownership of the real property and inventory are both significant. In addition, no secured creditors have liens encumbering these assets. As noted previously, Debtor conducts an ongoing business, employing a number of employees, having accounts with several trade creditors, and sustaining lines of credit from The County Bank. All of these factors indicate that there is a realistic prospect for reorganization, and, as a result, the Court rules that it is inappropriate to dismiss Debtor's case at this point.

## II. Relief from the Automatic Stay to Pursue the State Court Action

The next issue for the Court to consider is whether the automatic stay should be lifted in order to allow the State Court Action to proceed. The State Court Action involves two causes of action. The first seeks judicial dissolution, or orders directing, limiting, or prohibiting acts of Debtor or shareholders, directors, or officers of the purchase at fair value of the shares of the Minority Shareholders by Debtor or other shareholders. The second cause of action is for an accounting by the majority shareholders, and, upon the finding of self-dealing, waste, or breach of trust and other fiduciary obligations, the majority shareholders restoring this amount to the corporation. According to the Minority Shareholders, relief from the stay is warranted for both causes of action. In the first cause of action, the Minority Shareholders argue that the automatic stay has no effect on their claims against the majority shareholders individually and only stays the action against Debtor. In the second cause of action, the Minority Shareholders conclude that relief should be granted because Debtor is a nominal defendant in the litigation. In response, Debtor argues that it is an essential party in the action to receive the fair value for the shares. Regarding the second cause of action, Debtor argues that the action is a derivative suit that, upon Debtor's filing, became property of the bankruptcy estate. Consequently, the Minority Shareholders no longer have the ability to pursue the cause of action; instead, it belongs to Debtor as the debtor-in-possession.

To resolve this issue, the Court notes that its initial step is to agree with Debtor's analysis that, in the event of bankruptcy, the existing right to pursue a derivative action becomes part of the bankruptcy estate under § 541. *See Griffin v. Bonapfel (In re All American of Ashburn, Inc.),* 805 F.2d 1515, 1518 (11th Cir.1986)

(holding that a shareholders' derivative action belongs to the debtor corporation upon the filing of bankruptcy and finding that the lower court properly enjoined minority shareholders from proceeding with the derivative suit when the trustee settled the suit); *Skolnick v. Atlantic Gulf Communities Corp. (In re Gen. Dev. Corp.)*, 179 B.R. 335, 338 (S.D.Fla.1995) (ruling that a debtor's filing bankruptcy cuts off a shareholder's ability to bring a derivative claim because the bankruptcy estate includes all legal claims owned by a corporate debtor, including derivative actions brought by shareholders). The effect of a derivative suit becoming part of the bankruptcy estate is that shareholders no longer control the suit. Instead, the debtor-in-possession or the trustee decides how, when, and if the suit will proceed. *See General Development*, 179 B.R. at 339 (ruling that a debtor-in-possession becomes vested with the exclusive authority to pursue derivative suits upon a debtor's filing bankruptcy); *Brateman v. Brateman Bros., Inc. (In re Brateman Bros.)*, 135 B.R. 853, 856 (Bankr.N.D.Ind.1991) (finding that the trustee has the exclusive right to prosecute a derivative action pending before the debtor filed bankruptcy); *see also Mixon v. Anderson (In re Ozark Rest. Equip. Co., Inc.)*, 816 F.2d 1222, 1225 (8th Cir.1987) (noting that a trustee has the authority to bring an action for damages based upon claims that could have been asserted by the debtor corporation or by its stockholders in a derivative action).

 The next issue for the Court to consider is whether these causes of action represent derivative or direct actions, and, depending on the answer, whether they belong to the bankruptcy estate or whether they should otherwise be subject to the automatic stay. To decide the derivative action issue, the Court must examine South Carolina law. *See, e.g. Ochs v. Si-*

*mon (In re First Cent. Fin. Corp.)*, 269 B.R. 502, 509 (Bankr.E.D.N.Y.2001) (ruling that whether a cause of action is derivative or direct is an issue of state law). A derivative action is brought when a corporation suffered an injury from actionable wrongs committed by its officers and directors. The corporation or its shareholders can bring the cause of action on the corporation's behalf. If any relief is granted, it goes to the corporation; shareholders cannot recover the damages in their individual capacities because their loss is the indirect result of the injury to the corporation. *See Ward v. Griffin*, 295 S.C. 219, 367 S.E.2d 703 (App.1988). In contrast, a direct action is one where misconduct by the management of a corporation causes a particular loss to an individual shareholder. *See id.* Applying these principles, courts have ruled that actions based upon Securities Exchange Act and Rule 10b–5 violations (*see In re Reliance Acceptance Group, Inc.*, 235 B.R. 548, 555 (D.Del.1999)) or allegations of breach of fiduciary duty and negligent mismanagement that resulted in a reduction of a shareholder's ownership in a corporation (*see Hite v. Thomas & Howard Co. of Florence, Inc.*, 305 S.C. 358, 409 S.E.2d 340, 342 (1991), *overruled on other grounds by Huntley v. Young*, 319 S.C. 559, 462 S.E.2d 860, 861 (1995)) constitute direct actions. Where there are no allegations of a distinct injury to the shareholder (*see Ward*, 367 S.E.2d at 704) or where there is an action for misappropriation of corporate property (*see Davis v. Hamm*, 300 S.C. 284, 387 S.E.2d 676, 680 (App. 1989)), the action is derivative.

 The Court concludes that the second cause of action for an accounting based upon a diversion of corporate assets is a derivative action. The Court reaches this conclusion because the injury alleged would run to the corporation as a whole

and not just to the Minority Shareholders. Moreover, the cause of action closely mirrors one for misappropriation of corporate property, a cause of action that South Carolina courts have treated as derivative. *See Davis*, 387 S.E.2d at 680. The second cause of action, therefore, cannot be pursued by the Minority Shareholders and relief from stay for that purpose is denied at this time.

■ The first cause of action is an action against Debtor seeking judicial dissolution and other relief pursuant to S.C.Code Ann. §§ 33–14–300 and 33–14–310 (Law.Co-op.1988). As alternative forms of relief, the Minority Shareholders seek the dissolution of Debtor, or orders directing, limiting, or prohibiting acts of Debtor or shareholders, directors or officers, or the purchase at fair value of the Minority Shareholders' shares by Debtor or other shareholders. Although this cause of action is direct as the Minority Shareholders can bring it themselves without asserting it on behalf of the corporation, the suit implicates the automatic stay because an action to dissolve a corporation is "against the debtor" as interpreted under the broad umbrella of § 362(a)(1). *See Brateman Brothers*, 135 B.R. at 855 (noting that a pending suit for dissolution was stayed when the debtor corporation filed bankruptcy). This is true even if the Minority Shareholders elect not to seek the drastic remedy of dissolving the corporation but only wish to compel the purchase of their shares at a fair value by the majority shareholders. To obtain this relief, the Minority Shareholders must still invoke S.C.Code Ann. § 33–14–300 (Law. Co-op.1988) and demonstrate a ground for dissolving the corporation. *See* S.C.Code Ann. § 33–14–310(d); *Hite*, 409 S.E.2d at

344 (holding that a shareholder could seek only the purchase of his shares for relief pursuant to § 33–14–310 and not demand dissolution; however, the shareholder must prove a ground for dissolution under § 33–14–300). Dissolution is an action against Debtor and the Minority Shareholders' action as pled seeks remedies against Debtor. Moreover, the action potentially affects the viability, governance and operation of Debtor as a corporation. In sum, the Court rules that the manner in which the cause of action is pled, relying on the judicial dissolution statute, falls under the protection of the automatic stay as the action is against Debtor. However, the Court notes that if an action directly against the majority shareholders for breach of fiduciary duty or negligent mismanagement exists outside of the judicial dissolution statute, such an action may not fall within § 362's prohibitions.

■ Upon recognizing the application of the automatic stay, the Court could grant relief from the stay pursuant to § 362(d)(1) for cause to allow the Minority Shareholders to continue the State Court Action upon the condition that the remedy be limited to nondebtor parties. However, the Court declines to grant such relief at this time for the following reasons. First, counsel for the Minority Shareholders argued at the hearing that their action to value shares is dependent upon the recovery of corporate assets alleged to be diverted by the majority shareholders. Such an action, as stated above, is derivative in nature and as such is property of the estate. A review of such allegations and any action for recovery should be undertaken or administered in the bankruptcy case.[3] Also, granting relief for the

---

**3.** The Court notes that Debtor moved for the appointment of an examiner pursuant to § 1104 whose tasks could include an investi-

gation of the allegations of improper transfer or diversion of corporate assets or benefits. However, counsel for the Minority Sharehold-

state court to proceed would require the state court to make findings regarding corporate affairs and governance, the allegations of diversion of corporate assets, and a determination of grounds for dissolution. Such findings could unduly complicate and potentially bind this Court under the collateral estoppel doctrine. Moreover, it is likely this Court will address the same issues that are the subject of the State Court Action's Complaint; therefore, the State Court Action, which has not yet gone to trial, would be duplicitous. Third, as stated in the context of the Motion to Dismiss, Debtor has significant equity in its assets and a source for operating capital to assist it in its ongoing operations and preservation of assets. These factors weigh against a finding of cause for granting relief from stay. Fourth, the Minority Shareholders' rights should not take precedence over the rights of creditors that are best protected and considered in the bankruptcy case. The Court notes that an unsecured creditors committee has been appointed and retained counsel who appeared at the hearing and objected to the Minority Shareholders' Motion. Fifth, the allowance of the State Court Action would unduly distract the management's focus from directing Debtor's reorganization efforts. This Court provides a better forum for the Minority Shareholders to examine and question the operations and governance of Debtor as controlled by the majority shareholders. Finally, the extent of equity that apparently exists in the assets of Debtor encourages an orderly and consolidated reorganization process from which the Minority Shareholders are likely to derive the full value of their interests while ensuring payment to creditors.

For these reasons as well as the totality of the circumstances, the Motion for Relief from Stay is denied at this time. It is apparent that a central reason for Debtor's filing was the shareholder dispute, and, in as much as the parties were ready for trial in state court, many of the issues raised in the State Court Action should be addressed early in this case.[4] The determinations appear essential to the formulation of a reorganization plan.

### CONCLUSION

From the arguments discussed above, it is therefore

**ORDERED** that the Minority Shareholders' Motion for Dismissal is denied;

**IT IS FURTHER ORDERED** that the Minority Shareholders' Motion for Relief from Stay is denied.

**AND IT IS SO ORDERED.**

---

ers opposed that appointment, and it was denied.

4. Two possible means by which these issues could be addressed would be the removal of the state court action to this Court or the filing of a claim by the Minority Shareholders and an objection to claim by Debtor.